UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA HOULE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) Case No. _____, |
| BRANDON J. LAFLAMME, | ) |
| GREGORY D. PEKARSKI, | ) |
| MICHAEL J. HAVEY, JR., | ) |
| JOSEPH L. RYNNE, JR., | ) |
| JOHN CUSHING, CITY OF METHUEN | ) |
| and JOHN DOE, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1441 and 1446, the defendants,

Brandon J. LaFlamme, Gregory D. Pekarski, Michael J. Havey, Jr., Joseph L. Rynnne, John

Cushing and City of Methuen (collectively "Defendants"), hereby remove the above-captioned

action from the Essex County Superior Court of the Commonwealth of Massachusetts to the

United States District Court for the District of Massachusetts, based on the following:

### State Court Action

1.     Brandon J. LaFlamme, Gregory D. Pekarski, Michael J. Havey, Jr., Joseph L.

Rynnne, John Cushing and City of Methuen are named as defendants in a civil action filed by

plaintiff Patricia Houle ("Plaintiff"), pending in Essex County Superior Court, Civil Action No.

2077CV00438-D ("the State Court Action").  A copy of the Complaint and Civil Action Cover

Sheet are attached as **Exhibit A**.

**Timeliness of Notice of Removal**

2.      The Complaint alleges that Defendants LaFlamme, Pekarski, Havey, Jr., Rynnne and Cushing are employed by the City of Methuen as police officers.  Defendants LaFlamme, Pekarski, Havey, Jr., Rynnne and Cushing were served with a Summons and copy of the Complaint for the State Court Action at the Methuen Police Department on July 23, 2020.

3.      The City if Methuen was served with a Summons and a copy of the Complaint for the State Court Action received by its Office of the City Solicitor on or around July 30, 2020. Pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is timely filed within thirty (30) days of service made on the defendants.

**Federal Question Jurisdiction**

4.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff purports to assert civil claims under Constitution and/or laws of the United States in Count 4, Count 5 and perhaps in Count 6 of her Complaint.  Count 4 of the Complaint asserts that Defendants LaFlamme, Pekarski, Havey Jr., Rynne and Cushing each is liable for "Violation of the Fourth and Fourteenth Amendments and Violation of 42 U.S.C., § 1983." Count 5 asserts that Defendants LaFlamme, Pekarski, Havey Jr., Rynne and Cushing each is liable for "Violation of 42 U.S.C., § 1985."  Plaintiff also may intend to assert a claim under the Constitution and/or laws of the United States in Count 6, which asserts liability for "Failure to Screen Before Hiring – Failure to Train – Failure to Supervise – Failure to Discipline." *See* Complaint, Counts 4, 5, 6.

5.      Pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(a), the United States District Court for the District of Massachusetts is the federal district court for the district embracing the place where the state court suit is pending.  Because both the Plaintiff and the Defendants are residents of the Eastern portion of the Commonwealth of Massachusetts.

Removal of this action to the United States District Court for the District of Eastern Division is proper.

6.      Defendants will promptly serve notice of the filing of this Notice of on Plaintiff and with the Clerk of the Essex County (Massachusetts) Superior Court, as required by 28 U.S.C. § 1446(d).  A copy of the Notice to the Clerk of the Essex County Superior Court is attached hereto as **Exhibit B**.

7.      Defendants will file a certified or attested copy of the state court record with this Court after filing of this Notice and upon receipt from the Civil Clerk, in accordance with Local Rule 81.1(c).

8.      By this Notice of Removal, Defendants do not waive any objections that they may have to service, personal jurisdiction, or venue, or any other defenses or objections that they may have to this action.  Defendants intend no admission of fact, law, or liability by this Notice and reserve all defenses, motions, and/or pleas.

9.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 1446(a).

WHEREFORE, Defendants give notice that the State Court Action now pending in the Superior Court of the Commonwealth of Massachusetts, Essex County is removed from that Court to this United States District Court for the District of Massachusetts.

Respectfully submitted,

The Defendants.

**BRANDON J. LAFLAMME, GREGORY D. PEKARSKI, MICHAEL J. HAVEY, JR., JOSEPH L. RYNNE, JR., JOHN CUSHING and CITY OF METHUEN,**

By Their attorneys,

/s/ William P. Breen, Jr.
William P. Breen, Jr. (BBO #558768)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two International Place, 16th Floor
Boston, MA  02110-2602
Telephone: 617.342.6800
Facsimile: 617.342.6899
wbreen@eckertseamans.com

Dated:  August 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those parties which are as non-registered participants, including specifically by Federal Express and first class U.S. mail, postage prepaid, to:

Walter H Jacobs, Esq.
Alexandria A. Jacobs, Esq.
W. Jacobs and Associates at Law, LLC
795 Turnpike Road
North Andover, MA  01845


/s/  William P. Breen, Jr.
William P. Breen, Jr.

# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
## SUPERIOR COURT DEPARTMENT

ESSEX, ss

LAWRENCE DIVISION
C.A. NO. 20**77**-CV- *00438-* D

|  |  |
|---|---|
| PATRICIA HOULE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| METHUEN, MA POLICE DEPARTMENT OFFICER | ) |
| BRANDON J. LAFLAMME, | ) |
| and | ) |
| METHUEN, MA POLICE DEPARTMENT OFFICER | ) |
| GREGORY D. PEKARSKI, | ) |
| and | ) |
| METHUEN, MA POLICE DEPARTMENT OFFICER | ) |
| MICHAEL J. HAVEY, JR., | ) |
| and | ) |
| METHUEN, MA POLICE DEPARTMENT SERGEANT | ) |
| JOSEPH L. RYNNE, JR., | ) |
| and | ) |
| METHUEN, MA POLICE DEPARTMENT DETECTIVE | ) |
| JOHN CUSHING | ) |
| and | ) |
| CITY OF METHUEN, | ) |
| and | ) |
| JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

FILED
ESSEX SUPERIOR COURT
2020 MAY 11  A 10: 51

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL
### INTRODUCTION

The Plaintiff, Patricia Houle ("Houle"), owns a home (the "Home") in Methuen, MA. On

July 28, 2017, an armed masked robbery allegedly occurred at a bank's outside ATM machine in

Methuen (the "Incident"). Suspecting that a male passenger in a car that was traveling south on

Route 28 in Methuen not far from the location of the bank shortly after the Incident may have been involved in the robbery, the alleged victim obtained the license plate number of the car. That alleged victim reported the Incident to the Methuen Police Department ("MPD"). After running the plate through its database, MPD officers determined that the car belonged to Houle. Notably, the alleged victim had not seen the male leave the ATM and get into the car and, in fact, had not seen the Vehicle at all at the time of the Incident. Nevertheless, the MPD found that the car belonged to Houle; and the MPD sent police cruisers and MPD officers to her Home to investigate. Without any search warrant, MPD officers ordered a male inside the Home to come out of the Home. Also, without a warrant, MPD Officers Greg Pekarski ("Pekarski") and Michael Havey ("Havey") broke into the Home and began searching. Houle told Pekarski and Havey to leave but they ignored her. In addition to violating Houle's Fifth Amendment rights and her rights under the Massachusetts Declaration of Rights, MPD Officer Brandon Laflamme ("Laflamme") conspired with other presently unknown John Doe individuals to provide perjurious testimony at a grand jury hearing regarding the conduct at Houle's Home. Ultimately, the male passenger was indicted. However, just prior to formal hearings on both a Motion to Dismiss due to perjured grand jury testimony and a Motion to Suppress for multiple constitutional violations, the Commonwealth decided to *nolle prosequi* the case. In December, 2018, just prior to the dismissal, the Commonwealth produced a report by MPD Detective John Cushing ("Cushing") that was written in 2018 but back-dated to July 2017 to hide the fact that it was written at the time and was at significant variance with the signed statement by the alleged victim. Houle now sues for violation of her constitutional rights against unreasonable search and seizure, for intentional and negligent infliction of emotional distress, for violations of her due process and civil rights, for violations of the Fourth and Fourteenth Amendments to the United

States Constitution, for violations of 42 U.S.C. § 1983, for violation of 42 U.S.C. § 1985, for

failure to screen, for failure to train, for failure to supervise, for failure to discipline, for violation

of the Equal Rights Amendment of the Constitution of the Commonwealth of Massachusetts, for

violation of the Massachusetts Civil Rights Act (Mass. Gen. Laws ch. 12), for violation of Mass.

Gen. Laws ch. 258, and for civil conspiracy with fees/costs pursuant to 42 U.S.C. § 1983 and

Mass. Gen. Laws ch. 12, §11 I, all as follows:

## PARTIES

1.  Patricia Houle ("Houle") is a natural person residing in Methuen, County of Essex, Commonwealth of Massachusetts.

2.  Houle was born in Massachusetts.

3.  Methuen Police Department ("MPD") Officer Brandon Laflamme ("Laflamme") is a natural person who was a duly appointed officer of the MPD at all relevant times.

4.  Laflamme was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

5.  MPD Officer Greg Pekarski ("Pekarski") is a natural person who was a duly appointed officer of the MPD at all relevant times.

6.  Pekarski was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

7.  MPD Officers Michael Havey ("Havey") is a natural person who was a duly appointed officer of the MPD at all relevant times.

8.  Havey was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

9. MPD Sergeant Joseph L. Rynne ("Rynne") is a natural person who was a duly appointed sergeant of the MPD at all relevant times.

10. Rynne was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

11. MPD Detective John Cushing ("Cushing") is a natural person who was a duly appointed detective of the MPD at all relevant times.

12. Cushing was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

13. The City of Methuen ("Methuen" or "City") is a city political subdivision of the Commonwealth of Massachusetts.

14. John Doe ("Doe") is a presently unknown individual who conspired with Laflamme to assist Laflamme commit perjury in his grand jury testimony.

15. Doe was acting within the scope of his employment under the color of law during all times relevant to this Complaint.

## JURISDICTION AND VENUE

16. The action involves violations of state statute, federal statute and federal and state constitutional protections pursuant to Mass. Gen. Laws ch. 258, Mass. Gen. Laws ch. 12, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth and Fourteenth Amendments to the United States Constitution, .and the Massachusetts Declaration of Rights.

17. The Massachusetts Superior Court Department of the Massachusetts Trial Court has jurisdiction for claims for damages greater than $50,000.00 pursuant to Mass. Gen. Laws ch. 212, § 3, and for equity pursuant to Mass. Gen. Laws ch. 212, § 4 and Mass. Gen. Laws ch. 214, §§ 1, 2, and 3.

18. Accordingly, jurisdiction is provided by Mass. Gen. Laws ch. 212, § 3.

19. Venue is appropriate Essex Superior Court because Methuen and the MPD are located in Essex County, Massachusetts; the Defendant individuals work in Essex County, Massachusetts for Methuen and the MPD, and the Plaintiff resides in Methuen, Essex County, Massachusetts.

## FACTS

20. On July 28, 2017, a masked male allegedly robbed a female individual from North Andover, (the "alleged victim") at gunpoint by approaching her car on foot at an ATM machine in Methuen, MA.

21. The alleged victim did not see the face of the perpetrator.

22. After the alleged robbery, the alleged victim drove from the bank ATM across the street to tell a man sitting on a bench what had happened.

23. The alleged victim then drive south on Route 28 and saw a car, which she had not seen at the time of the alleged robbery, also driving south on route 28.

24. The alleged victim saw the face of the front seat male passenger and recorded the license plate of the car.

25. The alleged victim then went to the MPD to report the robbery and gave the police the license plate number of the car she had seen on Route 28.

26. The MPD determined the address of the car owner from the license plate number and dispatched Laflamme and other area cruisers to investigate that address.

27. Rynne brought the alleged victim in his cruiser to the scene to perform a show-up identification of a male occupant of the house at that address.

5

28. While Rynne drive the alleged victim to the location, the two conversed about the Incident.

29. While the alleged victim was at the MPD and in transit to Houle's Home, Laflamme was outside watching Houle's son and remained outside.

30. Laflamme ultimately arrested Houle's son and transported him to the MPD.

31. While the alleged victim was at the MPD and in transit to Houle's Home, Pekarski and Havey broke into Houle's Home.

32. Pekarski entered Houle's Home without permission and without a search or arrest warrant.

33. Havey also entered Houle's Home without permission and without a search or arrest warrant.

34. Both Pekarski and Havey shined their flashlights into the eyes of the occupants.

35. Both Pekarski and Havey were told to leave Houle's Home by both Houle and her son's girlfriend, who also resided there.

36. Neither Pekarski nor Houle left Houle's Home when told to do so

37. Havey conducted a search of Houle's Home including opening closed doors in multiple other rooms.

38. Laflamme has been and still is a member of the MPD.

39. On September 6, 2017, Laflamme testified under oath before an Essex County Grand Jury.

40. To information and belief, Laflamme was prepped for his testimony by Doe.

41. To information and belief Doe coached Laflamme to testify in a manner that was not truthful or consistent with the oath that he would have to take before testifying.

42. Laflamme testified under oath that he "was dispatched to return to the station to take a report."

43. However, the truth is, as Laflamme indicated in his official MPD police report, he was dispatched to a private address in Methuen, Houle's Home, rather than to the MPD.

44. In addition, Laflamme the truth is that Laflamme did not take any report at the MPD station from anyone related to the Incident at that time.

45. Laflamme testified under oath that the alleged victim told him at the station "[s]he was at an ATM on Broadway.  A male suspect, wearing a black bandana, approached her with a handgun and demanded money from her."

46. However, the truth is that Laflamme was at Houle's Home in Methuen, to which he had been dispatched, rather than at the MPD station.

47. In addition, the truth is Laflamme did not talk with the alleged victim at all at that time.

48. Laflamme testified under oath that the alleged victim told him "[i]t was a handgun that was displayed and the bandana was a black bandana with white paisley on it, like, a paisley design of some sort."

49. However, the truth is that Laflamme was at Houle's Home in Methuen rather than at the MPD station and had not talked with the alleged victim at all at that time.

50. In addition, the truth is that the alleged victim has initially described the bandana to Rynne, not Laflamme, and described it as a "Black mask with white dots."

51. Laflamme's testimony was consistent with a bandana found inside Houle's Home but inconsistent with Woods' description to Rynne.

52. Laflamme testified under oath "[c]orrect" that the alleged victim told him the license plate number of the car she had observed the defendant riding in as a passenger.

53. However, the truth is that Laflamme was actually at Houle's Home in Methuen, rather than at the MPD station, and had not talked with the alleged victim at all at that time.

54. The truth is the license plate number of the observed car was given to Laflamme by the MPD dispatch, not by the alleged victim.

55. Laflamme testified under oath that the when he and other officers approached Houle's Home in Methuen, the defendant "immediately got up from that, I believe it was a couch, and exited the residence to see why we were approaching his house."

56. The truth is that Laflamme deliberately misled the grand jury by leaving out that the defendant was actually ordered out of the house by Laflamme and other armed MPD police officers rather than just voluntarily "exited the residence to see why we were approaching his house."

57. Laflamme testified under oath "[y]es" that Houle gave Laflamme permission to search her Home.

58. The truth is that Laflamme was never in direct conversation with Houle but had remained outside with the defendant.

59. Laflamme testified under oath that the car in the driveway at Houle's Home in Methuen "appeared to be the same vehicle" as the one in a "still shot" from the "surveillance video from the area where the robbery itself took place" which he testified under oath showed "a gray vehicle" that the alleged victim identified as the vehicle that she had seen on Route 28.

60. However, the truth is that the car in the "still shot" showed "a male subject with the bandana blocking then bottom half of his face, and it shows a handgun and the--gray vehicle" but the vehicle was the one the alleged victim was sitting in and could not be the same vehicle as was in the driveway at Houle's Home.

61. Laflamme repeatedly committed perjury before the grand jury in *Commonwealth v. Geary*.

62. Laflamme's perjury was intentional.

63. Laflamme's perjury was the result of gross negligence.

64. To information and belief, other MPD officers have committed perjury before a grand jury.

65. To information and belief, Methuen has done nothing effective to stop Laflamme's perjury before the grand jury and, in consequence, has a *de facto* practice and policy of tolerating and allowing the use of perjured testimony before the grand jury.

66. To information and belief, Methuen has done nothing effective to stop other officers' perjury before a grand jury and, in consequence, has a *de facto* practice and policy of tolerating and allowing the use of perjured testimony before the grand jury.

67. To information and belief, Methuen has done nothing effective to stop Laflamme's violation of the defendant's federal and state constitutional rights by committing perjury before the grand jury and therefore has a *de facto* practice and policy of tolerating and allowing the use of perjured testimony by officers of the MPD.

68. To information and belief, Methuen has done nothing effective to stop the general tolerance and acceptance by other officers of the MPD of the use of perjured testimony by certain officers and, in consequence, has a *de facto* practice and policy of tolerating and allowing the turning of a blind eye to the use of perjured testimony before the grand jury by certain members of the MPD.

69. In addition, Laflamme entered the curtilage of Houle's Home and conducted a search of her car parked within the curtilage on private property without a search warrant.

70. Pekarski has been and still is a member of the MPD.

71. On July 28, 2017, Pakarski, without any warrant or valid warrant exception, broke unto the Houle's Home in violation of Houle's federal and state constitutional rights against unreasonable search and seizure and her right to privacy.

72. Pekarski admits in his MPD Police Report that he entered Houle's Home.

73. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to obtain a search warrant before entering Houle's Home.

74. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to knock on the door or ring the bell to obtain permission before entering Houle's Home.

75. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to leave when told to do so by Houle after illegally entering Houle's Home.

76. Pekarski and Havey's body cameras shows that they moved the screen door and main door to enter Houle's Home.

77. Pekarsji did not have a search warrant.

78. Pekarski did not have permission to enter Houle's Home.

79. Pekarski was told by Houle to leave Houle's Home.

80. Pekarski and Havey's body cameras show Houle told them to leave her Home.

81. Pekarski did not leave Houle's Home.

82. Once Pekarski unlawfully entered Houle's Home, everything else that transpired is fruit from the poisonous tree.

83. Houle was at her Home with her son, his then girlfriend and their minor child.

84. By forcing his way into Houle's Home while in uniform and while armed with a gun in the presence of a child, Pekarski intended to, knew he would, or reasonably should have known he would inflict emotional distress on Houle.

85. Forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home was extreme, outrageous and a reflection of Pekarski's intolerable reckless ruthlessness and deliberate malevolence.

86. Pekarski's unlawful entry into Houle's Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

87. The distress that Houle endured due to Pekarski's conduct was of such severity that no reasonable person should be expected to endure it.

88. By forcing his way into Houle's Home while in uniform and while armed with a gun in the presence of children, Pekarski was grossly, deliberately and willfully negligent.

89. Houle was present at the time and location of Pekarski's unlawful entry into her Home.

90. Houle was shocked and placed in fear by Pekarski's sudden unlawful entry into her Home.

91. It was foreseeable that forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home, Pekarski would cause Houle emotional distress.

92. Pekarski's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

93. The distress that Houle endured due to Pekarski's conduct was of such severity that no reasonable person should be expected to endure it.

11

94. Pekarski intimidated Houle by pushing his way into her Home without first obtaining permission.

95. Pekarski intimidated Houle by pushing his way into her Home without a valid search warrant.

96. Pekarski intimidated Houle by pushing his way into her Home without a valid exception to the need for a search warrant.

97. Pekarski coerced Houle by pushing his way into her Home without first obtaining permission.

98. Pekarski coerced Houle by pushing his way into her Home without a valid search warrant.

99. Pekarski coerced Houle by pushing his way into her Home without a valid exception to the need for a search warrant.

100. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to obtain a search warrant before entering Houle's Home.

101. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to knock on the door or ring the bell to obtain permission before entering Houle's Home.

102. Pekarski's MPD report does not suggest or imply that it was impossible or objectively unreasonable to leave when told to do so by Houle after illegally entering Houle's Home.

103. Pekarski knew or should have known that he had no right to push his way into Houle's Home without a warrant or a warrant exception.

104. Pekarski knew or should have known that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

105. Pekarski knew or should have known that objectively reasonable Massachusetts police officer would be aware that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

106. Pekarski knew or should have known that he needed a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

107. Pekarski knew or should have known that objectively reasonable Massachusetts police officers would know that they need a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

108. No exception to the need for Pekarski to have a search warrant existed in the circumstances of the present case.

109. Pekarski knew or should have known that Houle has a right under the United States Constitution and the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure.

110. Pekarski knew or should have known that Houle's United States Constitutional rights are bright line rights known by all reasonable police officers.

111. Pekarski knew or should have known that no competent or reasonable police officer would ever violate such bright line United States Constitutional rights.

112. Pekarski knew or should have known that he was violating Houle's United States Constitutional rights.

113. Pekarski deprived Houle of her right under the United States Constitution and the Fourth and Fourteenth Amendment of the right to be free from unreasonable search and seizure.

114. Pekarski knew or should have known that Houle has a right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

115. Pekarski knew or should have known that Houle's Massachusetts Constitutional rights are bright line rights known by all reasonable police officers.

116. Pekarski knew or should have known that no competent or reasonable police officer would ever violate such bright line Massachusetts Constitutional rights.

117. Pekarski knew or should have known that he was violating Houle's Massachusetts Constitutional rights.

118. Pekarski deprived Houle of her right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure

119. Pekarski's actions were unreasonable under the circumstances of the situation.

120. As a result of his unreasonable actions, Pekarski has no qualified immunity.

121. Havey has been and still is a member of the MPD.

122. Havey accompanied Pekarski into Houle's Home without any warrant or valid warrant exception in violation of Houle's federal and state constitutional rights against unreasonable search and seizure and her right to privacy.

123. Pekarski and Havey's body cameras shows that they moved the screen door and main door to enter Houle's Home.

124. Havey did not have a search warrant.

125. Havey did not have permission to enter Houle's Home.

126. Havey was told by Houle to leave Houle's Home.

127. Havey did not leave Houle's Home.

128. Pekarski and Havey's body cameras show Houle told them to leave her Home.

129. Havey, without right to be present in Houle's Home, conducted a search of the Home.

130. Houle was at home with her son, his then girlfriend and their minor child.

131. By forcing his way into Houle's Home while in uniform and while armed with a gun in the presence of a child, Havey intended to, knew he would, or reasonably should have known he would inflict emotional distress on Houle.

132. Forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home was extreme, outrageous and a reflection of Havey's intolerable reckless ruthlessness and deliberate malevolence.

133. Havey's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

134. The distress that Houle endured due to Havey's conduct was of such severity that no reasonable person should be expected to endure it.

135. By forcing his way into Houle's Home while in uniform and while armed with a gun in the presence of children, Havey was grossly, deliberately and willfully negligent.

136. Houle was present at the time and location of Havey's unlawful entry into her Home.

137. Houle was shocked and placed in fear by Havey's sudden unlawful entry into her Home.

138. It was foreseeable that forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home, Havey would cause Houle emotional distress.

139. Havey's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

140. The distress that Houle endured due to Havey's conduct was of such severity that no reasonable person should be expected to endure it.

141. Havey intimidated Houle by pushing his way into her Home without first obtaining permission.

142. Havey intimidated Houle by pushing his way into her Home without a valid search warrant.

143. Havey intimidated Houle by pushing his way into her Home without a valid exception to the need for a search warrant.

144. Havey coerced Houle by pushing his way into her Home without first obtaining permission.

145. Havey coerced Houle by pushing his way into her Home without a valid search warrant.

146. Havey coerced Houle by pushing his way into her Home without a valid exception to the need for a search warrant.

147. Havey knew or should have known that he had no right to push his way into Houle's Home without a warrant or a warrant exception.

148. Havey knew or should have known that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

149. Havey knew or should have known that objectively reasonable Massachusetts police officer would be unaware that the right of citizens to be free from unreasonable search and

seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

150. Havey knew or should have known that he needed a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

151. Havey knew or should have known that objectively reasonable Massachusetts police officers would know that they need a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

152. Havey knew or should have known that no exception to the need for a search warrant existed in the circumstances of the present case.

153. Havey knew or should have known that Houle has a right under the United States Constitution and the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure.

154. Havey knew or should have known that Houle's United States Constitutional rights are bright line rights known by all reasonable police officers.

155. Havey knew or should have known that no competent or reasonable police officer would ever violate such bright line United States Constitutional rights.

156. Havey knew or should have known that he was violating Houle's United States Constitutional rights.

157. Havey deprived Houle of her right under the United States Constitution and the Fourth and Fourteenth Amendment of the right to be free from unreasonable search and seizure.

158. Havey knew or should have known that Houle has a right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

159. Havey knew or should have known that Houle's Massachusetts Constitutional rights are bright line rights known by all reasonable police officers.

160. Havey knew or should have known that no competent or reasonable police officer would ever violate such bright line Massachusetts Constitutional rights.

161. Havey knew or should have known that he was violating Houle's Massachusetts Constitutional rights.

162. Havey deprived Houle of her right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

163. Havey's actions were unreasonable under the circumstances of the situation.

164. As a result of his unreasonable actions, Havey has no qualified immunity.

165. Rynne has been and still is a member of the MPD.

166. Rynne also went into Houle's Home without permission and without any warrant or valid warrant exception in violation of Houle's federal and state constitutional rights against unreasonable search and seizure and her right to privacy.

167. Rynne did not have a search warrant.

168. Rynne did not have permission to enter Houle's Home.

169. Rynne, without right to be present in Houle's Home, participated in a search of the Home.

170. By entering Houle's Home while in uniform and while armed with a gun in the presence of a child, Rynne intended to, knew he would, or reasonably should have known he would inflict emotional distress on Houle.

171. Forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home was extreme, outrageous and a reflection of Rynne's intolerable reckless ruthlessness and deliberate malevolence.

172. Rynne's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

173. The distress that Houle endured due to Rynne's conduct was of such severity that no reasonable person should be expected to endure it.

174. By entering Houle's Home without permission while in uniform and while armed with a gun in the presence of a child, Rynne was grossly, deliberately and willfully negligent.

175. Houle was present at the time and location of Rynne's unlawful entry into her Home.

176. Houle was shocked and placed in fear by Rynne's sudden unlawful entry into her Home.

177. It was foreseeable that forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home, Rynne would cause Houle emotional distress.

178. Rynne's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

179. The distress that Houle endured due to Rynne's conduct was of such severity that no reasonable person should be expected to endure it.

180. Rynne intimidated Houle by entering her Home without first obtaining permission.

181. Rynne intimidated Houle by entering her Home without permission and without a valid search warrant.

182. Rynne intimidated Houle by entering her Home without permission and without a valid exception to the need for a search warrant.

183. Rynne coerced Houle by entering her Home without first obtaining permission.

184. Rynne coerced Houle by entering her Home without permission and without a valid search warrant.

185. Rynne coerced Houle by entering her Home without permission and without a valid exception to the need for a search warrant.

186. Rynne knew or should have known that he had no right to enter Houle's Home without a warrant or a warrant exception.

187. Rynne knew or should have known that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

188. Rynne knew or should have known that objectively reasonable Massachusetts police officer would be unaware that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

189. Rynne knew or should have known that he needed a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

190. Rynne knew or should have known that objectively reasonable Massachusetts police officers would know that they need a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

191. Rynne knew or should have known that no exception to the need for a search warrant existed in the circumstances of the present case.

192. Rynne knew or should have known that Houle has a right under the United States Constitution and the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure.

193. Rynne knew or should have known that Houle's United States Constitutional rights are bright line rights known by all reasonable police officers.

194. Rynne knew or should have known that no competent or reasonable police officer would ever violate such bright line United States Constitutional rights.

195. Rynne knew or should have known that he was violating Houle's United States Constitutional rights.

196. Rynne deprived Houle of her right under the United States Constitution and the Fourth and Fourteenth Amendment of the right to be free from unreasonable search and seizure.

197. Rynne knew or should have known that Houle has a right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

198. Rynne knew or should have known that Houle's Massachusetts Constitutional rights are bright line rights known by all reasonable police officers.

199. Rynne knew or should have known that no competent or reasonable police officer would ever violate such bright line Massachusetts Constitutional rights.

200. Rynne knew or should have known that he was violating Houle's Massachusetts Constitutional rights.

201. Rynne deprived Houle of her right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

202. Rynne's actions were unreasonable under the circumstances of the situation.

203. As a result of his unreasonable actions, Rynne has no qualified immunity.

204. Cushing entered Houle's Home after it had been unlawfully entered by other MPD officers.

205. Cushing unlawfully searched Houle's Home and took items of personal property belonging to the residents of the Home.

206. Cushing interviewed the alleged victim at the MPD.

207. Cushing never completed a report of his involvement in the investigation of the Incident at the time in July 2017.

208. Cushing interviewed the alleged victim again after the day of the Incident.

209. Cushing found out that the alleged victim's statement had been incomplete and misleading at best and contained false statements at worst.

210. Cushing never completed a report at the time he obtained new and potentially exculpatory information from the alleged victim in the days following the Incident.

211. In December, 2018, at the time when MPD officers were being subpoenaed for evidentiary hearings that were to be held in Essex Superior Court on motions to suppress evidence and to vacate the indictment of Houle's son based on allegations of perjury against Laflamme, plus conspiracy by Laflamme and Doe, the Commonwealth suddenly informed counsel that Cushing needed to compile a report that would then be submitted in supplemental discovery that was partially exculpatory.

212. The report submitted by the Commonwealth was noted to be back-dated to July 2017 even though it had not been produced in mandatory discovery and was supposedly drafted in December 2018 and then produced in 2018.

213. By not making a report at the time Cushing obtained the partially exculpatory information from the alleged victim, and by withholding that information until the eve of an evidentiary hearing at which he would be required to testify, Cushing violated Houle's son's due process right to a fair trial.

214. By not making a report at the time Cushing obtained the partially exculpatory information from the alleged victim, and by withholding that information until the eve of an evidentiary hearing at which he would be required to testify, Cushing was grossly, deliberately and willfully negligent.

215. Houle was present at the time and location of Cushing's unlawful entry into her Home.

216. Houle was shocked and placed in fear by Cushing's sudden unlawful entry into her Home.

217. It was foreseeable that forcing his way into Houle's Home without permission, without a warrant, without a valid warrant exception, and without any privilege while in uniform and armed with a gun when a child was in the Home, Cushing would cause Houle emotional distress.

218. Cushing's unlawful entry into her Home while in uniform and armed with a gun directly caused Houle significant emotional distress.

219. The distress that Houle endured due to Cushing's conduct was of such severity that no reasonable person should be expected to endure it.

220. Cushing knew or should have known that he had no right to enter Houle's Home without a warrant or a warrant exception.

221. Cushing knew or should have known that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

222. Cushing knew or should have known that objectively reasonable Massachusetts police officer would be unaware that the right of citizens to be free from unreasonable search and seizure is well established in the United States Constitution, the Massachusetts Declaration of Rights and related federal and Massachusetts case law.

223. Cushing knew or should have known that he needed a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

224. Cushing knew or should have known that objectively reasonable Massachusetts police officers would know that they need a search warrant to enter a private home unless the circumstances are clearly within a known and accepted exception to the requirement for a search warrant.

225. Cushing knew or should have known that no exception to the need for a search warrant existed in the circumstances of the present case.

226. Cushing knew or should have known that Houle has a right under the United States Constitution and the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure.

227. Cushing knew or should have known that Houle's United States Constitutional rights are bright line rights known by all reasonable police officers.

228. Cushing knew or should have known that no competent or reasonable police officer would ever violate such bright line United States Constitutional rights.

229. Cushing knew or should have known that he was violating Houle's United States Constitutional rights.

230. Cushing deprived Houle of her right under the United States Constitution and the Fourth and Fourteenth Amendment of the right to be free from unreasonable search and seizure.

231. Cushing knew or should have known that Houle has a right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

232. Cushing knew or should have known that Houle's Massachusetts Constitutional rights are bright line rights known by all reasonable police officers.

233. Cushing knew or should have known that no competent or reasonable police officer would ever violate such bright line Massachusetts Constitutional rights.

234. Cushing knew or should have known that he was violating Houle's Massachusetts Constitutional rights.

235. Cushing deprived Houle of her right under the Massachusetts Declaration of Rights to be free from unreasonable search and seizure.

236. Cushing's actions were unreasonable under the circumstances of the situation.

237. As a result of his unreasonable actions, Cushing has no qualified immunity.

238. Laflamme, Pekarski, Havey, Rynne, Cushing, and others conspired with each other to enter Houle's Home when they knew they did to possess an arrest or a search warrant and had no valid exception to the warrant requirement.

239. Laflamme, Pekarski, Havey, Rynne, Cushing, and others conspired with each other to violate Houle's constitutional rights.

240. Laflamme, Pekarski, Havey, Rynne, Cushing, and others conspired with each other to cover-up violations of Houle's constitutional rights.

241. Laflamme, Pekarski, Havey, Rynne, Cushing, and others conspired with each other to inflict emotional distress on Houle.

242. Laflamme, Pekarski, Havey, Rynne, Cushing, and others conspired with each other to cover-up Houle's common law causes of action.

243. Laflamme conspired with Doe to commit perjury before the grand jury.

244. Laflamme conspired with Doe to cover-up the violations of Houle's constitutional rights.

245. Laflamme conspired with Doe to cover-up Houle's common law causes of action.

246. Houle sent a presentment letter to Methuen to the mayor, the city clerk and the city attorney on July 19, 2019.

247. Methuen denied any liability for its or its officers' conduct.

248. Methuen has a practice of allowing its police officers to willfully violate the constitutional rights of its citizens with impunity.

249. Methuen has a practice of failing to discipline officers who willfully violate the constitutional rights of its citizens.

250. Methuen has a practice of failing to properly investigate willful violations of the constitutional rights of its citizens.

251. Methuen has been sued multiple times in the past for violating the rights of its residents to be on notice of the MPD's practice and policy of looking the other way when complaints are filed and ignoring them.

252. Methuen has been aware for years of use of violations of constitutional rights by members of the MPD and done little to eliminate the abuse making it an established custom, and pattern of conduct of the MPD.

253. Methuen has had the 'requisite knowledge' to be fully aware of the violations of constitutional rights and perjurious testimony by members of the MPD but continued to be deliberately indifferent.

254. Methuen has had the 'requisite knowledge' to be fully aware of the lack of proper screening before hiring officers to avoid violations of constitutional rights but continued to be deliberately indifferent.

255. Methuen has had the 'requisite knowledge' to be fully aware of the lack of proper training of its officers to avoid the violations of constitutional rights but continued to be deliberately indifferent.

256. Methuen has had the 'requisite knowledge' to be fully aware of the lack of proper supervision of its officers to avoid the use of excessive force, among other violations of constitutional rights but continued to be deliberately indifferent.

257. Methuen has had the 'requisite knowledge' to be fully aware of the lack of proper discipline of its officers to avoid the use of excessive force, among other violations of constitutional rights but continued to be deliberately indifferent.

258. Methuen has been aware of the violations of constitutional rights, partially outlined *supra*, for years, giving Methuen the 'requisite knowledge' and making its failure to act to properly screen, train, supervise and discipline its police officers in their official functions 'deliberate indifference.'

### COUNT 1
### CIVIL CONSPIRACY

259. Houle repeats and re-alleges ¶¶ 1-258 above and incorporates them herein by reference.

260. Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing conspired to unlawfully search Houle's Home, and to deprive her of her due process rights.

261. Defendants Laflamme and Doe conspired to plan and to submit perjurious testimony to the grand jury.

262. Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing had no lawful right to enter Houle's Home.

263. Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing had no right to withhold a police report and then to submit that report on the eve of an evidentiary hearing at which they were to testify with a date that was deliberately back-dated.

264. Defendants Laflamme and Doe had no right to plan and submit perjurious testimony to the grand jury.

265. Houle has sustained permanent emotional trauma due to the unlawful search, the violation of her due process rights and the perjured testimony.

266. WHEREFORE, Houle seeks:

    a.  Judgement for Houle on Count 1 of the Complaint;

    b.  Compensatory damages;

    c.  Punitive damages;

    d.  Interest;

    e.  Court costs;

    f.  Attorney's fees;

    g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

    h.  An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

    i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

j.   Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 2
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

267. Houle repeats and re-alleges ¶¶ 1-266 above and incorporates them herein by reference.

268. Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing acting alone and in concert with each other, acted intentionally in unlawfully entering and searching Houle's Home when no valid justification existed.

269. Defendants Laflamme and Doe conspired to plan and to submit perjurious testimony to the grand jury.

270. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe's conduct was extreme and outrageous.

271. Houle has sustained (and continues to sustain) extreme emotional suffering as a direct and proximate result of the acts and omissions of Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe.

272. Houle has suffered, and continues to suffer, severe emotional distress, resulting in physical, psychiatric and emotional symptoms.

273. WHEREFORE, Houle seeks:

a.   Judgement for Houle on Count 2 of the Complaint;

b.   Compensatory damages;

c.   Punitive damages;

d.   Interest;

e.   Court costs;

f.   Attorney's fees;

g. An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h. An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i. An injunction barring members of the MPD from submitting perjured grand jury testimony;

j. Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 3
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

274. Houle repeats and re-alleges ¶¶ 1-273 above and incorporates them herein by reference.

275. Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing acting alone and in concert with each other, acted negligently in unlawfully entering and searching Houle's Home when no valid justification existed.

276. Defendants Laflamme and Doe acted negligently in planning and to submitting perjurious testimony to the grand jury.

277. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe's conduct was in breach of their duty.

278. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe's conduct was extreme and outrageous.

279. Houle has sustained (and continues to sustain) extreme emotional suffering as a direct and proximate result of the acts and omissions of Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe.

280. Houle has suffered, and continues to suffer, severe emotional distress, resulting in physical, psychiatric and emotional symptoms.

281. WHEREFORE, Houle seeks:

    a.  Judgement for Houle on Count 3 of the Complaint;

    b.  Compensatory damages;

    c.  Punitive damages;

    d.  Interest;

    e.  Court costs;

    f.  Attorney's fees;

    g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

    h.  An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

    i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

    j.  Such additional orders as this Honorable Court may deem just and appropriate.

### COUNT 4
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS, AND VIOLATION OF 42 U.S.C. § 1983

282. Houle repeats and re-alleges ¶¶ 1-281 above and incorporates them herein by reference.

283. Houle's Home was unlawfully entered and searched by Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing.

284. Houle's Home was unlawfully entered and searched without valid justification in violation of his Fourth and Fourteenth Amendment protections.

285. Laflamme and Doe planned and submitted perjurious testimony to the grand jury.

286. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe directly and proximately caused the following by acting alone or in concert with each other and other MPD police officers:

   (a) Violation of Houle's Fourth and Fourteenth Amendment right to be free from unreasonable search;

   (b) Violation of the Houle's clearly established Fourteenth Amendment right to due process of law;

   (c) Other tortious activity that rises to the level of constitutional violations.

287. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe, by their actions described *supra,* subjected Houle to the deprivation of her rights, privileges, or immunities secured by the Constitution and laws of the United States of America.

288. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered by intimidation and coercion with the exercise or enjoyment by Houle of rights secured by the Constitution or laws of the United States and of rights secured by the Constitution or laws of the Commonwealth of Massachusetts.

289. WHEREFORE, Houle seeks:

   a. Judgement for Houle on Count 4 of the Complaint;

   b. Compensatory damages;

   c. Punitive damages;

   d. Interest;

e. Court costs;

f. Attorney's fees;

g. An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h. An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i. An injunction barring members of the MPD from submitting perjured grand jury testimony;

j. Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 5
## VIOLATION OF 42 U.S.C. § 1985

290. Houle repeats and re-alleges ¶¶ 1-289 above and incorporates them herein by reference.

291. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe conspired with each other and other MPD police officers to prevent each other from performing his duty to prevent the unlawful search of Houle's Home, to timely complete and submit truthful and properly dated police reports, to plan and submit truthful testimony to the grand jury, interfered with the lawful discharge of the duties of their offices, and sought to molest, hinder, intimidate and impede each other in the discharge of their official duties.

292. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe conspired with each other and other MPD police officers to impede, hinder, obstruct, and defeat the due course of justice by acting in concert and conspiring to deny Houle the equal protection of the laws.

293. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe conspired with other and other MPD police officers to deprive, either directly or indirectly, Houle of the equal protection of the laws, or of equal privileges and immunities under the laws and conspired to prevent or hinder each other as a duly appointed MPD police officer from giving or securing to all persons within the Commonwealth of Massachusetts the equal protection of the laws.

294. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered by intimidation and coercion with the exercise or enjoyment by Houle of rights secured by the Constitution or laws of the United States and of rights secured by the Constitution or laws of the Commonwealth of Massachusetts.

295. WHEREFORE, Houle seeks:

   a. Judgement for Houle on Count 5 of the Complaint;

   b. Compensatory damages;

   c. Punitive damages;

   d. Interest;

   e. Court costs;

   f. Attorney's fees;

   g. An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

   h. An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

j.  Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 6
## FAILURE TO SCREEN BEFORE HIRING-FAILURE TO TRAIN–FAILURE TO SUPERVISE-FAILURE TO DISCIPLINE-

296. Houle repeats and re-alleges ¶¶ 1-295 above and incorporates them herein by reference.

297. The MPD and the City failed to screen properly screen individuals before hiring them as police officers.

298. The MPD and the City failed to train its police officers in the performance of proper searches, of proper investigation, of proper report writing, of proper grand jury preparation, of proper and truthful grand jury testimony, and of adherence to constitutional and civil rights by members of the MPD.

299. The MPD and the City failed to properly supervise its police officers in the performance of proper searches, of proper investigation, of proper report writing, of proper grand jury preparation, of proper and truthful grand jury testimony, and of adherence to constitutional and civil rights by members of the MPD.

300. The MPD and the City failed to train its police officers in the need for proper searches, for proper investigation, for proper report writing, for proper grand jury preparation, for proper and truthful grand jury testimony, and for adherence to constitutional and civil rights by members of the MPD.

301. The MPD and the City failed to supervise its police officers in the need for proper searches, for proper investigation, for proper report writing, for proper grand jury

35

preparation, for proper and truthful grand jury testimony, and for adherence to constitutional and civil rights by members of the MPD.

302. The MPD and the City have a custom or pattern of not training to prevent abuse of civil rights and failure to perform proper searches, failure to perform proper investigation, failure to perform proper report writing, failure to perform proper grand jury preparation, failure to perform proper and truthful grand jury testimony, and failure to adhere to constitutional and civil rights by members of the MPD.

303. The MPD and the City have a custom or pattern of not supervising to prevent abuse of civil rights and failure to perform proper searches, failure to perform proper investigation, failure to perform proper report writing, failure to perform proper grand jury preparation, failure to perform proper and truthful grand jury testimony, and failure to adhere to constitutional and civil rights by members of the MPD.

304. The MPD and the City have a custom or pattern of not retraining when finding abuses of civil rights and failure to perform proper searches, failure to perform proper investigation, failure to perform proper report writing, failure to perform proper grand jury preparation, failure to perform proper and truthful grand jury testimony, and failure to adhere to constitutional and civil rights by members of the MPD.

305. The MPD and the City are deliberately indifferent to the abuse of civil rights and failure to perform proper searches, failure to perform proper investigation, failure to perform proper report writing, failure to perform proper grand jury preparation, failure to perform proper and truthful grand jury testimony, and failure to adhere to constitutional and civil rights by members of the MPD.

306. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered by intimidation, coercion, unlawful searches, failure to perform proper investigation, failure to perform proper report writing, failure to perform proper grand jury preparation, failure to perform proper and truthful grand jury testimony, and failure to adhere to constitutional and civil rights with the exercise or enjoyment by Houle of rights secured by the Constitution or laws of the United States and of rights secured by the Constitution or laws of the Commonwealth of Massachusetts.

307. The MPD and the City have not taken any action and have essentially found Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe did nothing wrong in conducting unlawful searches, in failing to perform proper investigations, in failing to properly and timely write reports without falsifying the date, in failing to perform proper grand jury preparation, in failing to perform proper and truthful grand jury testimony, and in failing to adhere to constitutional and civil rights

308. WHEREFORE, Houle seeks:

   a.  Judgement for Houle on Count 6 of the Complaint;

   b.  Compensatory damages;

   c.  Punitive damages;

   d.  Interest;

   e.  Court costs;

   f.  Attorney's fees;

   g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h. An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i. An injunction barring members of the MPD from submitting perjured grand jury testimony;

j. Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 7
## VIOLATION OF THE MASSACHUSETTS DECLARATION OF RIGHTS

309. Houle repeats and re-alleges ¶¶ 1-308 above and incorporates them herein by reference.

310. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe violated Houle's right to be free from violations of her United States and Massachusetts constitutional rights, free from violations of federal and state law, free from the Defendants' conspiracy with each other and other MPD police officers to prevent each other from performing his duty to prevent the unlawful search of Houle's Home, to timely complete and submit truthful and properly dated police reports, and to plan and submit truthful testimony to the grand jury, and free from the emotional distress inflicted upon her which occurred when Houle's Home was unlawfully entered and searched, when MPD reports were not timely written and then when written were falsified, and when false grand jury testimony was planned and given.

311. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered by intimidation and coercion with the exercise or enjoyment by Houle of rights secured by the constitution or laws of the Commonwealth of Massachusetts.

312. WHEREFORE, Houle seeks:

a. Judgement for Houle on Count 7 of the Complaint;

b.  Compensatory damages;

c.  Punitive damages;

d.  Interest;

e.  Court costs;

f.  Attorney's fees;

g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h.  An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

j.  Such additional orders as this Honorable Court may deem just and appropriate.

## COUNT 8
## VIOLATION OF THE EQUAL RIGHTS AMENDMENT OF THE CONSTITUTION OF THE COMMONWEALTH OF MASSACHUSETTS

313. Castro repeats and re-alleges ¶¶ 1-312 above and incorporates them herein by reference.

314. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered with the exercise or enjoyment by Houle of rights secured by the constitution or laws of the Commonwealth of Massachusetts because she was a woman.

315. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe violated Houle's rights to equal treatment.

316. WHEREFORE, Houle seeks:

a.  Judgement for Houle on Count 8 of the Complaint;

b.  Compensatory damages;

c.  Punitive damages;

d.  Interest;

e.  Court costs;

f.  Attorney's fees;

g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h.  An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

j.  Such additional orders as this Honorable Court may deem just and appropriate.

### COUNT 9
### VIOLATION OF MASS. GEN. LAWS CH. 258

317. Houle repeats and re-alleges ¶¶ 1-316 above and incorporates them herein by reference.

318. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe, acting alone or in concert with other MPD officers, acted negligently in entering Houle's Home, in searching Houle's Home, in not writing timely reports, in falsifying those reports, and in planning to and falsely testifying at the grand jury.

319. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe's conduct was in negligent breach of their duty.

320. Houle has sustained extreme emotional suffering as a direct and proximate result of the acts and omissions of Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe.

321. Houle has suffered severe emotional distress, resulting in physical, psychiatric and emotional symptoms.

322. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe and the City negligently caused significant emotional injury to Houle (including PTSD, anxiety, and fear among others) plus financial injury.

323. The City negligently failed to train its police officers in the performance of proper searches, in proper, timely and truthful report writing, and in truthful grand testimony preparation and testimony.

324. The City negligently failed to properly supervise its police officers in the proper searches, in proper, timely and truthful report writing, and in truthful grand testimony preparation and testimony.

325. The City negligently failed to train its police officers in the need for advance consent, a warrant or a valid warrant exception before entering a private residence and searching the premises.

326. The City negligently failed to supervise its police officers in the need for advance consent, a warrant or a valid warrant exception before entering a private residence and searching the premises.

327. The City has a negligent custom or pattern of not training to prevent abuse of civil rights.

328. The City has a negligent custom or pattern of not supervising to prevent abuse of civil rights.

329. The City has a negligent custom or pattern of not retraining when finding abuses of civil rights.

330. The MPD and the City are negligently indifferent to the abuse of civil rights by members of the MPD.

331. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe negligently interfered by intimidation and coercion with the exercise or enjoyment by Houle of rights secured by the constitution or laws of the United States and of rights secured by the constitution or laws of the Commonwealth of Massachusetts.

332. WHEREFORE, Houle seeks:

    a. Judgement for Houle on Count 9 of the Complaint;

    b. Compensatory damages;

    c. Punitive damages;

    d. Interest;

    e. Court costs;

    f. Attorney's fees;

    g. An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

    h. An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

    i. An injunction barring members of the MPD from submitting perjured grand jury testimony;

    j. Such additional orders as this Honorable Court may deem just and appropriate.

### COUNT 10
### VIOLATION OF MASS. GEN. LAWS CH. 12

333. Houle repeats and re-alleges ¶¶ 1-332 above and incorporates them herein by reference.

334. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe violated Houle's right to be free from violations of her United States and Massachusetts constitutional rights, free from violations of federal and state law, free from the Defendants' conspiracy with each other and other MPD police officers to prevent each other from performing his duty to prevent the unlawful search of Houle's Home, to timely complete and submit truthful and properly dated police reports, and to plan and submit truthful testimony to the grand jury, and free from the emotional distress inflicted upon her which occurred when Houle's Home was unlawfully entered and searched, when MPD reports were not timely written and then, when written, were falsified, and when false grand jury testimony was planned and given.

335. Defendants Laflamme, Pekarski, Havey, Rynne, Cushing, and Doe interfered by intimidation and coercion with the exercise or enjoyment by Houle of rights secured by the constitution or laws of the Commonwealth of Massachusetts.

336. Methuen, by its actions and inactions detailed above, violated Houle's right to be free from violations of her United States and Massachusetts constitutional rights, free from violations of federal and state law.

337. WHEREFORE, Houle seeks:

   a. Judgement for Houle on Count 10 of the Complaint;

   b. Compensatory damages;

   c. Punitive damages;

   d. Interest;

   e. Court costs;

   f. Attorney's fees;

g.  An injunction barring members of the MPD from conspiring to violate individuals' constitutional rights and protections;

h.  An injunction barring members of the MPD from conducting unlawful searches of private homes, from withholding relevant police reports, and from falsifying police reports--all in violation of departmental policies;

i.  An injunction barring members of the MPD from submitting perjured grand jury testimony;

j.  Such additional orders as this Honorable Court may deem just and appropriate.

## JURY TRIAL

Plaintiff seeks a jury trial for all issues so triable.

Respectfully submitted,
PATRICIA HOULE,
Plaintiff,
By her attorneys,

*/s/ Walter H. Jacobs*

WALTER H. JACOBS
BBO #672106
wjacobslaw@gmail.com

*/s/ Alexandria A. Jacobs*

ALEXANDRIA A. JACOBS
BBO # 682114
ajacobslaw@gmail.com

W. Jacobs and Associates at Law, L.L.C.
795 Turnpike Road
North Andover, MA 01845
978-688-0900

DATE: May 1, 2020

44

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2077CV00438-D | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | |
|---|---|---|
| PLAINTIFF(S): PATRICIA HOULE | | COUNTY<br>Essex |
| ADDRESS: C/O WALTER H. JACOBS & ALEXANDRIA A. JACOBS, ESQ. | | |
| | DEFENDANT(S): BRANDON LAFLAMME; GREGORY PEKARSKI; MICHAEL HAVEY; | |
| | JOSEPH RYNNE, JR.; JOHN CUSHING; CITY OF METHUEN; JOHN DOE | |
| ATTORNEY: ALEXANDRIA A. JACOBS, ESQ.; WALTER H. JACOBS, ESQ. | | |
| ADDRESS: 795 TURNPIKE STREET | ADDRESS: METHUEN CITY HALL, 41 PLEASANT STREET, METHUEN, MA 01844 | |
| NORTH ANDOVER, MA 01845 | | |
| BBO: WHJ 672106; AAJ 682114 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | CIVIL CONSPIRACY, NEGLIGENCE | A | [X] YES   [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   [ ] YES   [X] NO          Is this a class action under Mass. R. Civ. P. 23?   [ ] YES   [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ......................................................... $
  2. Total doctor expenses ........................................................... $
  3. Total chiropractic expenses .................................................. $
  4. Total physical therapy expenses ........................................... $
  5. Total other expenses (describe below) .................................. $
                                                           Subtotal (A): $

B. Documented lost wages and compensation to date ................. $
C. Documented property damages to date .................................. $
D. Reasonably anticipated future medical and hospital expenses . $
E. Reasonably anticipated lost wages ....................................... $
F. Other documented items of damages (describe below) ........... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

UNCONSTITUTIONAL SEARCH OF HOME, PERJURY BEFORE
GRAND JURY, CIVIL CONSPIRACY, EMOTIONAL
DISTRESS, NEGLIGENCE                                    TOTAL (A-F):$ 7,100,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):
                                                           TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X  *Walter H. Jacobs*          Date: May 4, 2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

N/A

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X  *Walter H. Jacobs*          Date: May 4, 2020

# EXHIBIT B

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                       SUPERIOR COURT
                                                 LAWRENCE DIVISION
                                                 2077-CV-00438-D

<table>
<tr><td>

PATRICIA HOULE,

     *Plaintiff*,

v.

BRANDON J. LAFLAMME,
GREGORY D. PEKARSKI,
MICHAEL J. HAVEY, JR.,
JOSEPH L. RYNNE, JR.,
JOHN CUSHING, CITY OF METHUEN
and JOHN DOE,

     *Defendants*.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td></tr>
</table>

### <u>NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT</u>

TO:    Civil Clerk's Office          Walter H. Jacobs
       Lawrence Superior Court    Alexandria A. Jacobs
       43 Appleton Way          W. Jacobs and Associates at Law, LLC
       Lawrence, MA  01841     795 Turnpike Road
                                  North Andover, MA  01845

      PLEASE TAKE NOTICE that Defendants Brandon J. LaFlamme, Gregory D. Pekarski, Michael J. Havey, Jr., Joseph L. Rynnne, John Cushing and City of Methuen C have filed a Notice of Removal of the above-entitled matter in the office of the Clerk of the United States District Court for the District of Massachusetts, a copy of which is attached hereto as **<u>Exhibit A</u>**.

Respectfully submitted,

The Defendants,

**BRANDON J. LAFLAMME, GREGORY D. PEKARSKI, MICHAEL J. HAVEY, JR., JOSEPH L. RYNNNE, JOHN CUSHING AND CITY OF METHUEN,**

By Their Attorney,

/s/ William P. Breen, Jr.
William P. Breen, Jr., BBO# 558768
Eckert Seamans Cherin & Mellott, LLC
Two International Place, 16th Floor
Boston, MA 02110
(617) 342-6800
(617) 342-6899 (facsimile)
wbreen@eckertseamans.com

Dated:  August 13, 2020

## CERTIFICATE OF SERVICE

I, William P. Breen, Jr., certify that on August 13, 2020, I served the within document by causing a copy of same to mailed via first-class mail, postage prepaid, upon the following counsel of record:

Walter H Jacobs, Esq.
Alexandria A. Jacobs, Esq.
W. Jacobs and Associates at Law, LLC
795 Turnpike Road
North Andover, MA  01845

/s/ William P. Breen, Jr.
William P. Breen, Jr., BBO# 558768