UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA HOULE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:20-cv-11524-IT |
| | * |
| BRANDON J. LAFLAMME, GREGORY | * |
| D. PEKARSKI, MICHAEL J. HAVEY, JR., | * |
| JOSEPH L RYNNE, JR., JOHN CUSHING, | * |
| CITY OF METHUEN, and JOHN DOE, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

August 24, 2021

TALWANI, D.J.

Plaintiff Patricia Houle brings this case against the City of Methuen, five members of the Methuen Police Department ("MPD"), and a John Doe (collectively, "Defendants"). Her Amended Complaint [#11] alleges that four MPD officers broke into her house and searched it without a warrant; that one of the four made a false police report; that a fifth conspired with Doe to give false grand jury testimony; and that Methuen failed to properly screen, train, supervise, and discipline its officers. She asserts ten claims under the federal and state constitutions and state law. Pending before the court is Defendants' Motion to Dismiss [#13] based on lack of standing and failure to state a claim. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.  **Factual Background**

As alleged in the Amended Complaint [#11], the facts are as follows. On July 28, 2017, a masked man allegedly robbed a woman ("alleged victim") at gunpoint at an ATM in Methuen. Am. Compl. ¶ 21 [#11]. Shortly thereafter, while driving on Route 28, the alleged victim saw a

passenger in another car whom she suspected was the man who had robbed her. Id. at ¶¶ 24-25. She reported the robbery to the MPD and provided them with the car's license plate number. Id. at ¶ 26. The MPD determined that the car belonged to Houle and dispatched several officers to her address to investigate. Id. at 2, ¶ 27.

When the officers arrived, Houle was home with her son, his girlfriend, and their minor child. Id. at ¶ 126. Officer Brandon LaFlamme conducted a search of Houle's car, which was parked on Houle's property. Id. at ¶ 121. He also ordered Houle's son to come out of the house. Id. at 2, ¶ 30. Meanwhile, Sergeant Joseph Rynne drove the alleged victim to the address to perform a show-up identification of Houle's son. Id. at ¶ 28. LaFlamme then arrested Houle's son. Id. at ¶ 31.

At some point, Officers Gregory Pekarski and Michael Havey entered Houle's home and conducted a search. Id. at ¶¶ 37, 49. They did not have a warrant, and they did not leave when Houle instructed them to. Id. at 2, ¶¶ 37, 40-41, 49, 52-53. Rynne and Detective John Cushing entered Houle's house after Pekarski and Havey, also without a warrant, and collected evidence. Id. at ¶¶ 199-203, 237-38. All four officers were armed with guns when they entered the home. Id. ¶¶ 127, 164, 205, 250.

Houle alleges that Cushing did not properly complete a police report of his involvement in the investigation. Id. at ¶ 240. Houle was not charged with any crime. Her son, however, was indicted by a grand jury at which LaFlamme testified. Id. at 2, ¶ 87. Houle alleges that LaFlamme perjured himself before the grand jury and that Doe helped LaFlamme prepare his testimony. Id. at ¶¶ 88-89, 112, 276.

## II. Procedural Background

Houle filed this action in Essex County Superior Court on May 1, 2020. State Court Compl. 7 [#1]. She asserted ten claims—including civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985 and the Massachusetts constitution, and assorted state law violations—against Methuen, five members of the MPD, and a John Doe. Id. at 7-9. Defendants removed the case on August 13, 2020, based on federal question jurisdiction, and moved to dismiss. Notice of Removal [#1]; Mot. to Dismiss [#5]. Houle then filed an Amended Complaint [#11], asserting the same causes of action against the same parties. Defendants have now filed the pending Motion to Dismiss [#13], seeking dismissal of all claims based on lack of standing and failure to state a claim.[1]

## III. Standard of Review

A motion to dismiss for lack of standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating its existence. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only

---

[1] When a complaint is filed in federal court, a defendant ordinarily has twenty-one days to file a responsive pleading. See Fed. R. Civ. P. 12(a)(1)(A)(i). However, a response to an amended pleading must generally be made within fourteen days. See Fed. R. Civ. P 15(a)(3).

Houle correctly notes that Defendants filed their motion a week late. Pl's Opp. 10 [#15]. She asks that the court therefore deny the Motion to Dismiss [#13] as untimely. Id. But where Defendants filed their motion within twenty-one days of Houle's filing her Amended Complaint [#11], the court concludes that the late filing was likely inadvertent and declines to exercise its discretion to deny the motion.

3

when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id. A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In evaluating a motion to dismiss for failure to state a claim, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson, 469 F.3d at 150. A court may allow a Rule 12(b)(6) motion based on an affirmative defense if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Id. (quoting Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)).

4

### IV.     Discussion

    A.     *Standing*

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." Katz, 672 F.3d at 71 (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). And where, as here, the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate [her] standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that [s]he, [her]self, is among the persons injured by that conduct." Hochendoner, 823 F.3d at 731–32.

All of Houle's claims against LaFlamme and Doe are based on LaFlamme's allegedly false testimony before the grand jury that indicted her son. Am. Compl. ¶¶ 297, 305, 312, 321, 327, 334-43, 346, 356, 361-62, 372 [#11]. Defendants argue that, where Houle was not charged

5

with a crime, she does not have standing to assert claims based on LaFlamme's testimony. Defs' Mem. 6-7 [#14]. Houle counters that her claims against LaFlamme are based on the lies that he told regarding who entered her house. Pl's Opp. 22 [#15]. But Houle has not explained how LaFlamme's alleged perjury deprived *her* of a legally protected interest. She has not pointed to a direct, particularized injury but rather makes general statements about the need for the court to recognize, "[a]s a matter of public policy," that "there must be respect for the law and respect for the oath to speak truthfully." Id. at 3. The court therefore concludes that Houle has not alleged a cognizable deprivation of a constitutional right based on LaFlamme's grand jury testimony.

Houle's claims against Cushing are based in part on his alleged failure to properly date a police report. Am. Compl. ¶¶ 240-47, 299, 327, 334-35, 346, 356, 372 [#11]. As with her allegations against LaFlamme, Houle has not explained how she, personally, was injured by the police report, stating instead that "Cushing violated Houle's son's due process right to a fair trial." Id. at ¶ 246. To the extent that Houle's claims are based on LaFlamme's grand jury testimony or Cushing's police report, Houle lacks standing to bring them, and the claims are dismissed.

    B.    *Civil Rights Claims*

        1.    Section 1983 Claims

Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st

Cir. 1997). Here, there is no dispute that the officers were, at all times relevant, acting under color of state law. At issue is whether the officers deprived Houle of a legally cognizable right.

### a.     Unreasonable Search (Count IV)

The broad legal principles concerning entry by police officers into a home are "well settled." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The Supreme Court has unambiguously held that "under the Fourth and Fourteenth Amendments . . . a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" Id. (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Warrantless entry by the police into a home is thus permissible when justified by exigent circumstances or valid consent. See Caniglia v. Strom, 141 S.Ct. 1596, 1599 (2021); Groh v. Ramirez, 540 U.S. 551, 564 (2004).

Houle alleges that Pekarski, Havey, Cushing, and Rynne entered her home and conducted a warrantless search, despite requests that the officers leave. Am. Compl. ¶¶ 37, 40-41, 49, 52-53, 199-200, 237 [#11]. Based on these allegations, the court concludes that Houle has adequately pleaded a violation of her Fourth Amendment right against an unreasonable search.

The officers assert that they are entitled to qualified immunity. Defs' Mem. 14 [#14]. Specifically, the officers claim that (1) their entry into Houle's home was a constitutionally permissible "protective sweep" because they entered the home only for a few minutes to search for a possible armed accomplice, id. at 17 (citing United States v. Lawlor, 406 F.3d 37, 41 (1st Cir. 2005), and (2) in any event, Houle consented to a search for evidence, id. at 18. They argue further that any constitutional right was not "clearly established" and that their actions are therefore protected under to qualified immunity. Id. at 14; see Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). But in making these arguments, the officers ask the court to look beyond the

7

allegations in the Amended Complaint [#11]. While the factual record may ultimately support Defendants' qualified immunity defense, when qualified immunity is raised in a motion to dismiss, it is the defendants' conduct *as alleged in the complaint* that is examined for "objective legal reasonableness." Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Crediting Houle's version of the facts, the allegations are "insufficient to meet the reasonable suspicion benchmark" required to justify a protective sweep. See United States v. Delgado-Perez, 867 F.3d 244, 253 (1st Cir. 2017). The allegations in the Amended Complaint [#11] also contradict Defendants' claims of consent. Based on the facts alleged, the officers would have known that there was no basis for a protective sweep and that conducting a warrantless search of a home without consent and under no exigent circumstances is a violation of the Fourth Amendment. See Groh, 540 U.S. at 564 ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional").

b. Civil Conspiracy (Count I)

Houle also alleges that Defendants Laflamme, Pekarski, Havey, Rynne, and Cushing conspired to unlawfully search her home and to deprive her of her constitutional rights. Am. Compl. ¶ 296 [#11]. A civil rights conspiracy under section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to

prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citations omitted).

As discussed above, Houle has adequately pleaded violations of her Fourth Amendment rights by Pekarski, Havey, Rynne, and Cushing. That all four officers are alleged to have entered Houle's home around the same time without a warrant supports the inference that they did so pursuant to an agreement to search her home. Houle has therefore stated a claim for conspiracy against those four officers. However, Houle has not provided any factual support for the claim that LaFlamme—who is alleged to have remained outside, Am. Compl. ¶¶ 30, 33 [#11]—was part of the alleged conspiracy to unconstitutionally search her home. Accordingly, Houle has failed to state a claim for conspiracy against him.

   c.  Municipal Liability (Count VI)

Houle's final section 1983 claim is against Methuen. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). Under Monell, a municipality can be held liable if the alleged constitutional deprivations arise from a government policy or practice. Id. To state a claim, a plaintiff must allege that (1) the municipality had a custom, policy, or practice of failing to investigate, discipline, supervise, or train its officers; (2) this custom, policy, or practice "amount[ed] to deliberate indifference to the rights of persons with whom the [officers] come into contact"; and (3) the custom, policy, or practice was the direct cause of the alleged constitutional violation. DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). The custom, practice, or policy must be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force

of law." Connick v. Thompson, 563 U.S. 51, 61 (2011); see also Monell, 436 U.S. at 691 (informal practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law").

Houle's Monell claim is based on several theories: (1) failure to properly screen individuals before hiring them as police officers; (2) failure to train; (3) failure to supervise; and (4) failure to discipline. Am. Compl. ¶¶ 333-43 [#11]. However, Houle has not pointed to specific instances of failure to screen, train, supervise, or discipline that could lead the court to conclude that Methuen had a custom or policy of deficient screening, training, supervision, or discipline. See, e.g., Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019) ("A plaintiff typically must show a pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train"). Rather, her allegations are conclusory statements such as that "Methuen has a practice of failing to properly investigate willful violations of the constitutional rights of its citizens." Am. Compl. ¶ 284 [#11]. Such allegations are insufficient to state a claim for municipal liability under the plausibility pleading standard. See Iqbal, 556 U.S. at 663.

2. Section 1985 Claim (Count V)

Houle's next federal civil rights claim is brought pursuant to 42 U.S.C. § 1985. Section 1985 contains five discrete substantive clauses. See Kush v. Rutledge, 460 U.S. 719, 724 (1983) ("As now codified in § 1985, the long paragraph is divided into three subsections. One of the five classes of prohibited conspiracy is proscribed by § 1985(1), two by § 1985(2), and two by § 1985(3)"). Section 1985(1) concerns conspiracies to prevent a federal officer from performing his or her duties. 42 U.S.C. § 1985(1). The first clause of section 1985(2) concerns conspiracy to obstruct justice in the federal courts, and the second concerns conspiracy to obstruct justice in the

state courts. Id. § 1985(2). The first clause of section 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws. Id. § 1985(3). The second clause of § 1985(3) provides a cause of action for a conspiracy to interfere with federal elections. Id.

Houle does not specify in her Amended Complaint [#11] which provisions of section 1985 she relies upon for her claims in this case, but clearly section 1985(1) (preventing federal officers from performing duties), the first clause of section 1985(2) (conspiracy to obstruct justice in federal courts), and the second clause of section 1985(3) (interference with federal elections) are not applicable. To the extent that her claim falls under the second clause of section 1985(2) (conspiracy to obstruct justice in state courts), the factual basis for that claim seems to be the allegedly perjured grand jury testimony for which, as explained above, Houle lacks standing. Finally, the first clause of section 1985(3) (conspiracy to deny equal protection of the laws) requires the claimant to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a claim. Griffin v. Breckenridge, 403 U.S. 88, 103 (1971). Houle has not alleged that any defendant acted with the requisite class-based animus. She has therefore failed to state a claim under section 1985.

       3.       State Civil Rights Claims

            a.       Massachusetts Constitution and Declaration of Rights (Counts VII-VIII)

Houle brings two claims under the Massachusetts Constitution and its Declaration of Rights. However, there is no private cause of action directly under the Massachusetts Constitution. See Martino v. Hogan, 37 Mass. App. Ct. 710, 720-21, 643 N.E.2d 53 (1994) (holding that there is no authority for a damages claim or an equitable claim directly under the Declaration of Rights and stating that the Massachusetts civil right statute, Mass. Gen. Laws ch.

12, § 11I "occupies the field" in a similar manner to section 1983). Houle has therefore failed to state a claim upon which relief may be granted.

        b.        Mass. Gen. Laws ch. 12, § 11I (Count X)

Houle also brings a claim against the officers under Mass. Gen. Laws ch. 12, § 11I. To state a claim under this statute, a plaintiff must show a deprivation of a federally or state-protected right "by threats, intimidation or coercion." Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018). "'Threat' in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994). "Intimidation," meanwhile, "involves putting in fear for the purpose of compelling or deterring conduct." Id. Finally, "coercion" is "the use of physical or moral force to compel [another] to act or assent." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565, 646 N.E.2d 139 (1995). The "threats, intimidation or coercion" requirement "was specifically intended to limit liability under the Act." Id. at 565-66.

Here, Houle states only in conclusory fashion that the officers "coerced" and "intimidated" her by entering her home while armed. Additionally, there are no factual allegations supporting an inference that this was "for the purpose of compelling or deterring conduct." She has therefore failed to state a claim under Mass. Gen. Laws ch. 12, § 11I.

        C.        *State Tort Claims*

In addition to her civil rights claims, Houle brings claims under state tort law for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

1. Intentional Infliction of Emotional Distress (Count II)

To state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to inflict emotional distress or should have known it was likely to result; (2) the defendant's conduct was extreme and outrageous; (3) the actions of the defendant caused the emotional distress; and (4) the emotional distress sustained by the plaintiff was severe. See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976)). Actionable conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community." Mello v. Stop & Shop, 402 Mass. 555, 562-63, 524 N.E.2d 105 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987).

Here, Houle alleges that Pekarski, Havey, Rynne, and Cushing entered her home armed with guns in the presence of a child, and that they refused to leave when asked. Am. Compl. ¶¶ 127-29, 133, 164-66, 170, 202-05, 209, 249-50 [#11]. Although the conduct as alleged is sufficient to state a claim for a constitutional violation, it is not so atrocious and intolerable as to state a claim for intentional infliction of emotional distress.

2. Negligent Infliction of Emotional Distress (Count III)

Under section 2 of the Massachusetts Tort Claims Act ("MTCA"), no public employee shall be liable "for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258, § 2. Houle alleges that all the officers were acting within the scope of their employment during all times relevant. Am. Compl. ¶¶ 4, 7, 9, 11, 13 [#11]. Houle's claim for negligent infliction of emotional distress is therefore barred.

3.  Negligence (Count IX)

Houle's last claim alleges that Methuen was negligent in its training and supervision of the MPD officers. Id. at ¶¶ 361-68.[2] The MTCA abrogates sovereign immunity and allows suit of public entities to the extent provided in the statute. See Mass. Gen. Laws ch. 258, § 2. As relevant here, it states that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances," subject to several exclusions. Id.; see also id. § 10 (exclusions).

Methuen does not point to any exclusions that preclude Houle's claim but rather contends that her allegations of negligent training and supervision are insufficient. Defs' Mem. 3 [#14]. The court agrees. "Employers are responsible for exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs." Roe No. 1 v. Children's Hosp. Med. Ctr., 469 Mass. 710, 714-15, 16 N.E.3d 1044 (2014). To establish an employer's liability for negligently training and supervising an employee, a plaintiff must show that the "employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fail[ed] to take further action such as investigating, discharge or reassignment." Foster v. The Loft, Inc., 26 Mass. App. Ct. 289, 291, 526 N.E.2d 1309 (1988). Other than conclusory allegations, such as that "Methuen has been aware of the violations of constitutional rights . . . for years," Am. Compl. ¶ 286 [#11], Houle does not allege that Methuen knew or should have known of any problems with the individual officers, nor has

---

[2] To the extent that Houle asserts a negligence claim against any of the individual officers, it is barred for the same reasons as her claim for negligent infliction of emotional distress.

14

she alleged that Methuen failed to take corrective action upon becoming aware of such issues. In addition, it is not enough for a plaintiff to show deficiencies in a public employer's training program and subsequent supervision; "[a] causal relationship between any breach of duty and the harm suffered by the plaintiff is an essential element of her claim." Nelson v. Salem State Coll., 446 Mass. 525, 538, 845 N.E.2d 338 (2006). Houle has not alleged any such causal connection and has therefore failed to state a claim for negligent training and supervision against Methuen.

### V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [#13] is GRANTED IN PART and DENIED IN PART. To the extent that any of the causes of action are based on LaFlamme's allegedly perjured testimony or Cushing's police report, they are DISMISSED for lack of standing. Counts II (intentional infliction of emotional distress), III (negligent infliction of emotional distress), V (section 1985), VI (Monell liability), VII (Massachusetts Declaration of Rights), VIII (Massachusetts Constitution), IX (MTCA), and X (Massachusetts civil right statute) are DISMISSED for failure to state a claim. Count I (civil conspiracy) is DISMISSED against LaFlamme and Doe for failure to state a claim.

IT IS SO ORDERED.

August 24, 2021                                    /s/ Indira Talwani
                                                   United States District Judge